NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| PATRICIA KENNEDY,<br><br>    Plaintiff,<br><br>    v.<br><br>STATE FARM FIRE AND CASUALTY COMPANY,<br><br>    Defendant. | No. 22cv4643 (EP) (MAH)<br><br>**OPINION** |

**PADIN, District Judge.**

On December 12, 2020, a clog in a plumbing line caused significant damage throughout the home of Plaintiff Patricia Kennedy. At that time, she had a homeowner's policy with Defendant State Farm Fire and Casualty Company ("State Farm").

This matter arises from a dispute between Plaintiff and State Farm regarding how much Plaintiff is owed under her policy for the mitigation and repair work performed following this incident. Plaintiff claims that State Farm has underpaid her by about $65,000. On the other hand, State Farm asserts that under Plaintiff's policy, she is entitled to no more than she has already received.

Presently before the Court is State Farm's motion for summary judgment.  D.E. 56-1 ("Motion" or "Mot.").[1] Plaintiff opposes the Motion.  D.E. 57-1 ("Opposition" or "Opp'n").[2] State Farm replies.  D.E. 58 ("Reply").[3]

The Court decides the matter without oral argument.  *See* Fed. R. Civ. P. 78; L. Civ. R. 78.1(b).  For the reasons explained below, the Court will **GRANT** State Farm's Motion.

---

[1] For ease of reference, the Court refers to State Farm's brief in support of its motion its Motion. The Notice of Motion is at D.E. 56.

[2] For ease of reference, the Court refers to Plaintiff's brief in opposition to State Farm's Motion as its Opposition.  The Notice of Opposition is at D.E. 57.

[3] Under this District's Local Rules, reply briefs are limited to fifteen pages in length.  L. Civ. R. 7.2(b).  State Farm's Reply is overlength by nearly four full pages.  State Farm has not sought leave to file an overlength brief either.  Accordingly, the Court will not consider any argument raised by State Farm past the fifteenth page of its Reply.  *See Foulke v. Twp. of Cherry Hill*, No. 23-2543, 2024 WL 3568841, at *4 (D.N.J. July 29, 2024) (noting that courts may strike a overlength brief where a party has failed to obtain the Court's prior consent).

## I.    BACKGROUND

### A.    Factual Background[4]

Plaintiff and her husband Guillermo Kennedy own the residence located at 595 Ridgeland Terrace in Leonia, New Jersey (the "Property"), a bi-level home with a finished basement. SF SUMF ¶ 1; D.E. 56-4, Ex. C ("First Christenson Report") at 1441[5]. On December 12, 2020, a clog in a plumbing line in a bathroom on the second floor caused water and sewage to overflow from a toilet, causing damage in several rooms across multiple floors, including on the first floor of the Property and into the basement. SF SUMF ¶ 3; P. COMF ¶ 3 (citing D.E. 56-6, Ex. B ("Claim

---

[4] The facts in this section are drawn from: (1) State Farm's Statement of Undisputed Material Facts, D.E. 56-2 ("SF SUMF"); (2) Plaintiff's Counterstatement to State Farm's Statement of Undisputed Material Facts, D.E. 57-2 at 1-15 ("P. COMF"); (3) Plaintiff's Supplemental Statement of Material Facts, D.E. 57-2 at 16-17 ("P. Suppl. SUMF"); (4) State Farm's Response to Plaintiff's Supplemental Statement of Undisputed Material Facts ("SF Reply SUMF"); and (5) the exhibits referenced therein.

A party may properly dispute a fact by citing to materials in the record. Fed. R. Civ. P. 56(c)(1)(A). In the District of New Jersey, parties opposing summary judgment should provide "a responsive statement of material facts, addressing each paragraph of the movant's statement, indicating agreement or disagreement and, if not agreed, stating each material fact in dispute and citing to the affidavits and other documents submitted in connection with the motion." L. Civ. R. 56.1(a). Because it "is not the Court's responsibility to comb the record," any material fact not disputed may be deemed undisputed for purposes of summary judgment. *Id.*; *Baker v. The Hartford Life Ins. Co.*, No. 08-6382, 2010 WL 2179150, at *2 n.1 (D.N.J. May 28, 2010), *aff'd.* 440 F. App'x 66 (3d Cir. 2011). The Court will not individually parse out factual disputes, and if one party properly disputes a fact, that fact will be considered disputed for all. And to the extent the Court has noticed material facts in the record that contravene a party's representation, the Court may deem that fact disputed or unsupported by the record. *See Digiacomo v. Prudential Ins. Co. of Am.*, 501 F. Supp. 2d 626, 629 n.4 (D.N.J. 2007) (cited approvingly by the Third Circuit in *Boswell v. Eoon*, 452 F. App'x 107, 112 (3d Cir. 2011)). Unless otherwise indicated, all facts cited in the Opinion have been deemed undisputed.

[5] For ease of reference, the Court cites to the Bates numbers provided for the exhibits in the record as their page numbers.

3

File")[6] at 47).  Although the parties dispute the exact scope of the damage, at a minimum, three bathrooms, Plaintiff's hallways, her dining room, basement, and crawlspace were all affected. Claim File at 47; March Christenson Report at 1441.

At the time of the incident, the Property was insured under a State Farm Homeowners Policy, with a coverage period from January 22, 2020, to January 22, 2021.  SF SUMF ¶ 2 (citing D.E. 56-6, Ex. A (the "Policy")).

On December 14, 2020, Plaintiff reported the loss to State Farm.  *Id.* ¶ 4.  Plaintiff informed State Farm that she had retained Water Damage Solutions of Bergen LLC ("Water Damage Solutions") to perform emergency mitigation services and that they had already started working on the Property.  Claim File at 58.

Plaintiff also hired Andrew Weaver, a public adjuster, to represent her in connection with her claim.  SF SUMF ¶ 7.  On February 20, 2021, Weaver sent State Farm an estimate to repair the damage to Plaintiff's home, which was for $534,595.06.  *Id.* ¶ 9; D.E. 56-4, Ex. B ("Weaver Estimate") at 2611.  After receiving this estimate, State Farm hired Insurance Restoration Consultants ("IRC")—an independent vendor—to inspect the Property, evaluate the scope of the damage, and prepare its own estimate of the cost to repair the damage to the Property caused by the loss.  SF SUMF ¶ 10.

Ed Christenson from IRC inspected the Property with Weaver on March 15, 2021, and subsequently prepared a report for State Farm.  *Id.* ¶¶ 11-12 (citing First Christenson Report).  His report included notes about damage to the Property and work that had already been completed in

---

[6] State Farm refers to this document as an "electronic activity log for the subject claim."  D.E. 56-6 ¶ 3.  Plaintiff includes this same exhibit and refers to it as the "File History Information."  D.E. 57-3 ¶ 2.  For ease of reference, the Court refers to this document as the "Claim File" and cites to the Bates numbers on these pages.

the basement, first-floor dining room, kitchen, and on the second floor (in the hallway and the bathroom). *See* First Christenson Report at 1441-42. Based on his years of restoration experience, it was Christenson's professional opinion that the toilet overflow from the second-floor bathroom caused a loss categorized as a CAT 3, Class 3 sewage loss. *Id.* at 1442. He also concluded that the Weaver Estimate for $534,595.06 was not reflective of the scope of work required for the Property. *Id.* Christenson, on behalf of IRC, provided an estimate of the repairs of the home based on his inspection. SF SUMF ¶¶ 12, 14. The estimate provided a replacement cost value of $73,757.59 to repair the damage to the Property. *Id.* ¶ 14 (citing D.E. 56-4, Ex. D ("IRC Estimate")).

On March 29, 2021, State Farm Claim Specialist Linda Richardson prepared State Farm's repair estimate. *Id.* ¶ 15. Based on the IRC Estimate, State Farm estimated a replacement cost value of $80,084.55 to repair the covered damage to the Property, with an actual cash (depreciated) value of $75,183.23. *Id.* ¶ 16. That same day, Richardson sent Weaver an email with State Farm's estimate and sent Plaintiff a check for $75,183.23. *Id.* ¶¶ 17-18.

On April 16, 2021, Weaver sent State Farm a mitigation estimate/invoice in the amount of $97,021.07, which was prepared by Water Damage Solutions for emergency services performed at the Property. *Id.* ¶ 19. Believing this estimate to be inflated, State Farm asked Christenson to review it and submit a report regarding the mitigation costs. *Id.* ¶¶ 20-21. After reviewing the invoices from Water Damage Solutions, Christenson opined that the costs therein were "not ordinary, customary, or reasonable for this scope and type of loss." *Id.* ¶¶ 22-23 (citing D.E. 56-4, Ex. F ("Second Christenson Report") at 638). Christenson explained that, in his opinion, there was overlap between the mitigation work and the repair work to be completed, and calculated the separate mitigation costs to be $23,269.95. Second Christenson Report at 638. Following her

review of the Second Christenson Report, Richardson sent Weaver a check for $23,269.95 for the mitigation work performed at the Property.  SF SUMF ¶ 24.

While the parties were discussing (and disagreeing on) the mitigation costs, Weaver also sent Richardson a letter requesting a conversation with State Farm regarding the differences in his and State Farm's estimates of the value of the loss to the Property.  *Id.* ¶ 25.  After reviewing Weaver's submission, Richardson revised State Farm's repair estimate; she increased the replacement cost value from $80,084.55 to $84,520.02, and in turn, sent Weaver a check for $4,196.91 (the difference between the original and revised repair estimates).  *Id.* ¶¶ 27-28.

Throughout May, June, and July of 2021, Richardson and Weaver exchanged several emails regarding the repairs to the Property.  Initially, Richardson sought updates on what steps and repairs had been completed, to which Weaver told Richardson that the contractor Plaintiff hired—Building Blocks Restoration & Construction, LLC ("Building Blocks")—required approval and payment before starting the repair work.  *Id.* ¶¶ 29-32.  After sending Richardson Building Block's itemized repair estimate—which Richardson requested and which totaled $151,776.09—Weaver demanded that State Farm issue payment in that amount.  *Id.* ¶¶ 35-36.  Following additional back-and-forth between Richardson and Weaver regarding Plaintiff's contract with Building Blocks, including regarding differences in the scope of the estimates to repair the Property, Weaver sent Richardson an email with Plaintiff's signed Proof of Loss form, which he asserted "meets all of the requirements of the [P]olicy, and is based on the **ACTUAL** costs to rebuild the property."  *Id.* ¶ 41 (quoting D.E. 56-5, Ex. N at 482).

On July 26, 2021, Richardson sent Plaintiff a letter informing her that State Farm had rejected Plaintiff's submitted Proof of Loss.  *Id.* ¶ 43; D.E. 56-6, Ex. O ("July 26, 2021 Letter to Plaintiff").  The reason provided was that Plaintiff's "public adjuster must identify the differences

6

in scope in order for [State Farm] to continue [its] evaluation of [Plaintiff's] loss." July 26, 2021 Letter to Plaintiff.[7]

On August 17, 2021, and again on August 23, 2021, State Farm's counsel in this action ("State Farm's Counsel") sent Weaver letters requesting information concerning Plaintiff's contract with Building Blocks and all payments Plaintiff had made to date.  SF SUMF ¶¶ 44-45.  On August 30, 2021, Weaver produced a document which includes several items "missed by State Farm" in its estimates of the costs to repair the Property.  *Id.* ¶ 46 (citing D.E. 56-5, Ex. M).  After additional conversations with Weaver, State Farm decided that Weaver and Christenson should inspect the Property again.  *Id.* ¶ 47.  That inspection took place on September 27, 2021.  *Id.*

In addition to requesting certain information for Christenson following the September 27, 2021, inspection, State Farm's Counsel again sought documents from Weaver, including "[a]ll signed contracts for the work performed at the property to date," "[a]ll documents evidencing, referring, or relating to payments made for work performed at the property (i.e., invoices, receipts, checks evidencing payment, credit card statements, etc.)," and documents related to payments made for work to be performed at the Property.  *Id.* ¶¶ 49-51 (quoting D.E. 56-5, Ex. N at 1674).

Following his inspection of the Property on September 27, 2021, Christenson recommended that State Farm make a few adjustments to its estimates of the repair costs.  *Id.* ¶¶ 52 (citing D.E. 56-6, Ex. P ("Third Christenson Report")).  Accordingly, Richardson prepared an updated repair estimate for State Farm, which increased the replacement cost value from

---

[7] While Plaintiff admits she received this letter, she denies the merits of its conclusions because, in her view, Weaver had sufficiently expressed the differences between his estimates and those from State Farm.  P. COMF ¶ 43.

$84,520.02 to $87,692.94.  *Id.* ¶¶ 52-53.  On October 8, 2021, Richardson sent Weaver a check in the amount of $2,930.06 (the increase in the actual cash value to repair the Property).  *Id.* ¶ 54.

On October 8, 2021, State Farm's Counsel again requested Weaver provide a copy of Plaintiff's signed contract with Building Blocks, along with other documents.  *Id.* ¶ 56.  That email made clear that "[w]ithout the production of the information and documents requested, State Farm is unable to give further consideration any of the additional items being claimed.  Once again, if you wish for State Farm to consider a claim for additional items or amounts beyond what is set forth in its estimate, please produce the requested information and documents."  *Id.* (quoting D.E. 56-5, Ex. O).  At his deposition, Weaver could not recall if he ever provided State Farm with a copy of Plaintiff's signed contract with Building Blocks or evidence of any payments made by Plaintiff to Building Blocks.  *Id.* ¶ 57 (quoting D.E. 56-5, Ex. K at 161:18-25, 163:20-164:6, 164:23-166:3, and 171:2-172:7).[8]

Ultimately, Building Blocks did not perform all of the work listed on the itemized estimate Weaver initially provided State Farm.  *See id.* ¶¶ 60-62.  This is because Plaintiff did not accept that estimate, and the parties negotiated a lower rate where Building Blocks would perform a reduced amount of work.  *Id.* ¶¶ 60-61 (first citing D.E. 56-5, Ex. P, First Deposition of Guillermo Kennedy at 118:11-17; then citing D.E. 65-5, Ex. Q, Deposition of Lozenzie Valerie[9] ("Valerie Dep.") at 57:3-7).  According to Valerie, Plaintiff paid $32,900 for the revised proposal and about

---

[8] State Farm's exhibit ends at page 171 of the deposition.  Thus, the Court cannot determine whether the final citation it cites in its Statement of Undisputed Material Facts is accurate. Nevertheless, the other excerpts provided in the exhibit provide more than ample support for the proposition that Weaver did not recall sending State Farm a signed contract between Plaintiff and Building Blocks, or that he ever provided proof of any payments Plaintiff sent Building Blocks.

[9] Valerie is the owner of Building Blocks.  *See* SF SUMF ¶ 61.

$30,000 for the work that had already been done in the kitchen and on the first floor—a total of approximately $63,000[10] for all the work Building Blocks performed at the Property.  *Id.* ¶¶ 62, 64; Valerie Dep. at 59:2-17.

To complete the balance of the repairs that had been excluded from Building Block's reduced scope of work, Plaintiff and Mr. Kennedy hired a family friend named Noel.[11]  SF SUMF ¶ 65.  While Plaintiff testified that she and her husband paid Noel between $4,000 and $6,000, *id.* ¶ 66 (citations omitted), Mr. Kennedy testified that they paid Noel in the range of $14,000 to $16,000, *id.* (citing D.E. 56-5, Ex. Y, Second Deposition of G. Kennedy at 47:20-48:1).

Noel, Building Blocks, Water Damage Solutions, and Klodian Belegu from Quality Air Care Corp. ("Quality Air")[12] were the only ones to perform work at the Property during the relevant time period.  D.E. 65-5, Ex. S[13] at 100:21-101:01.  At her deposition, Plaintiff was asked to explain what outstanding items she believes she is entitled to be paid on, to which she responded, "No, I haven't said that I'm entitled to be paid on anything that wasn't paid."  Plaintiff's Dep. at 121:11-

---

[10] Plaintiff disputes the exact amount she paid Building Blocks, noting that in State Farm's Motion, it states the amount she paid was $64,067.06, as opposed to the $63,000 number provided in its Statement of Undisputed Material Facts.  COMF ¶ 64.  As Valerie's deposition confirms—and regardless of the number asserted in any brief—Plaintiff paid Building Blocks $62,900.  Valerie Dep. at 59:18-21; *see* D.E. 56-5, Ex. R (a proposal from Building Blocks quoting the "Family Room Rebuild" at $32,900).

[11] Noel's full name was not provided.

[12] Belegu was hired by Water Damage Solutions.  D.E. 56-5, Ex. X ("Belegu Dep.") at 108:21-24. He was hired "to run their testing to tell them what needs to be done."  *Id.* at 29:14-16.

[13] State Farm also includes excerpts from Plaintiff's October 12, 2023, deposition at D.E. 58-1, Ex. A.  Collectively, the Court will refer to these two exhibits as "Plaintiff's Deposition" or "Plaintiff Dep.".

15. Shortly thereafter, she stated that the only item she thinks State Farms should pay her for was "the work for water, [Belegu's] work." *Id.* at 121:23-122:3.

Plaintiff has not paid Water Damage Solutions or Quality Air for the work they completed on the Property. SF SUMF ¶¶ 69-70;[14] Plaintiff Dep. at 118:11-22. Plaintiff also confirmed that neither Water Damage Solutions nor Belegu have made a claim to her or her husband for additional payments. Plaintiff Dep. at 119:2-16.

As of October 2023, all repairs from the initial incident have been completed, and there is nothing more that needs to be done at the Property except to fix damage to the living room caused by traffic from contractors in the home during the repair and mitigation work. *Id.* at 116:1-14; P. COMF ¶ 68. Plaintiff has not submitted a claim for damages to the living room. Plaintiff Dep. at 116:21-23.

**B.      Procedural History**

Plaintiff commenced this action on June 13, 2022, in the Superior Court of New Jersey, Law Division, Bergen County. D.E. 1 ¶ 1; D.E. 1, Ex. A ("Complaint" or "Compl."). The Complaint contains two causes of action. In Count One, Plaintiff alleges that State Farm "breached its contractual obligations to pay benefits to Plaintiff for a loss covered under [State Farm]'s policy of insurance." Compl., Count One ¶ 6. In Count Two, Plaintiff brings claims for "bad faith misconduct." *Id.*, Count Two ¶ 3.

---

[14] Plaintiff admits that she did not pay for the work performed by Water Damage Solutions, but qualifies that admission by asserting that the reason she did not pay is because State Farm never paid her for the full mitigation amount, despite telling Plaintiff to proceed with the mitigation work. P. COMF ¶ 69 (citing Claim File at 55). But whether State Farm advised Plaintiff to "move forward with mitigation/emergency service work as need to get moisture/bacteria/damaged building items out to prepare for building repairs" is separate from whether Plaintiff paid Water Damage Solutions. Claim File at 55. Accordingly, this fact is deemed admitted.

10

State Farm removed this action on July 19, 2022, *see* D.E. 1, and filed its answer to the Complaint on August 9, 2022.  D.E. 4.

Over the next several years, the parties worked their way through discovery.  *See* Dkt.  At the conclusion of fact discovery, and after failing to settle, State Farm filed its Motion.

## II.    SUMMARY JUDGMENT STANDARD

A court should grant summary judgment only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "The substantive law governing the dispute will determine which facts are material, and only disputes over those facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *DeHart v. Horn*, 390 F.3d 262, 267 (3d Cir. 2004) (citation modified).

The movant bears the initial burden of showing the basis for its motion and demonstrating that no dispute of material fact exists.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant must support its position by citing to the record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials. . . ." Fed. R. Civ. P. 56(c)(1)(A).  Once the movant identifies evidence in support of its motion for summary judgment, the nonmovant must then counter with evidence that demonstrates there is a genuine issue of fact.  *Big Apple BMW, Inc. v. BMW of North Am., Inc.*, 974 F.2d 1358, 1362 (3d Cir. 1992).  The Court must view the evidence in the light most favorable to the non-moving party and

determine whether a genuine dispute exists. *Dee v. Borough of Dunmore*, 549 F.3d 225, 229 (3d Cir. 2008).

## III.    DISCUSSION

### A.    State Farm Is Entitled to Summary Judgment on Plaintiff's Breach of Contract Claim (Count One)

In New Jersey, to prevail on a breach of an insurance contract claim, a plaintiff must show that there is: "(1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Kimmel v. Mass. Bay Ins. Co.*, 787 F. Supp. 3d 18, 23 (D.N.J. 2025) (quoting *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007)). A plaintiff must also "specifically identify portions of the contract that were allegedly breached." *Coda v. Constellation Energy Power Choice, LLC*, 409 F. Supp. 3d 296, 303 (D.N.J. 2019).[15]

It is undisputed that a contract existed between the parties (*i.e.*, the Policy). SUMF ¶ 2. The Policy sets forth the manner State Farm will make payments for covered damage:

> (1) until actual repair or replacement is completed, ***we*** will pay only the ***actual cash value*** of the damaged part of the property, up to the applicable limit of liability shown in the ***Declarations***, not to exceed the cost to repair or replace the damaged part of the property;

---

[15] Plaintiff has not identified in the Complaint—or in her Opposition—which provision of the Policy State Farm has breached. That is reason alone to grant State Farm summary judgment. *See Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 280 (3d Cir. 2010) (affirming district court's *sua sponte* grant of summary judgment due to the plaintiff's failure to identify an express contract provision that was breached); *Tangle v. State Farm Ins. Co.*, No. 08-112, 2010 WL 3420661, at *6 (W.D. Pa. Aug. 4, 2010) (recommending that a breach of contract claim not survive summary judgment where the plaintiff failed to identify a specific contractual provision that was breached and only made conclusory allegations regarding any breach of the contract), *report and recommendation adopted*, 2010 WL 3420657 (W.D. Pa. Aug. 30, 2010), *aff'd*, 444 F. App'x 592 (3d Cir. 2011).

(2) when the repair or replacement is actually completed, *we* will pay the covered additional amount *you* actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the ***Declarations***, whichever is less;

(3) to receive any additional payments on a replacement cost basis, *you* must complete the actual repair or replacement of the damaged part of the property within two years after the date of loss, and notify *us* within 30 days after the work has been completed.

Policy at 2661 (emphases in original).

"Under New Jersey law, the interpretation of an insurance policy is a question of law for the court. Insurance policies are construed in accordance with contract principles, and courts aim to give effect to the intent of the parties as expressed by the language of the policy." *Kimmel*, 787 F. Supp. 3d at 22. "Where the policy terms are clear and unambiguous, the court is bound to enforce the policy as written and should not 'write for the insured a better policy of insurance than the one purchased.'" *Id.* (quoting *Flomerfelt v. Cardiello*, 202 N.J. 432 (2010)).

Here, the Policy language is unambiguous. Once repairs are complete, State Farm will "pay the covered additional amount [the insured] actually and necessarily spend[s] to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the Declarations, whichever is less." Policy at 2661. It is undisputed that the repairs to the Property stemming from the initial incident have been completed. SF SUMF ¶ 68. Accordingly, the Court will consider how much Plaintiff has "actually and necessarily" spent to repair the Property to determine how much she is owed under the Policy.

Plaintiff paid Building Blocks $62,900 and paid Noel, at most, $16,000. Valerie Dep. at 59:18-21; Second Deposition of G. Kennedy at 47:20-48:1. Plaintiff never paid Water Damage

Solutions or Belegu.  SF SUMF ¶¶ 69-70; Plaintiff Dep. at 118:11-22.  Thus, Plaintiff has paid, at most, $78,900, to repair the Property.[16]

State Farm has made four payments on Plaintiff's claim.  Three of those payments were for repair costs—$75,183.23 (paid on March 29, 2021); $4,416.91 (paid on April 30, 2021); and $2,930.06 (paid on October 8, 2021).  SF SUMF ¶¶ 18, 28, 54.  State Farm also made one payment for mitigation costs—$23,269.95 (paid on April 30, 2021).  *Id.* ¶ 24.  State Farm has therefore paid $82,310.02 for repair costs and $23,269.95 for mitigation costs—totaling $105,580.15.

Under the unambiguous terms of the Policy, Plaintiff cannot recover more than she has paid.  *See* Policy at 2661.  Because Plaintiff "actually and necessarily" spent at most $78,900, and State Farm has paid $105,580.15, State Farm is not required to pay Plaintiff any additional money.  Accordingly, State Farm has not breached the Policy.[17]

---

[16] Plaintiff claims that she has incurred $176,921.07 in costs, and therefore, there is a $65,058.18 difference between what State Farm has paid and what she is still owed.  P. Suppl. SUMF ¶¶ 2-3.  To support that assertion, Plaintiff first cites to the Claim File at page "4" (which the Court understands to be page 27 using the Bates numbers) and then cites to State Farm's Motion (without including a pin cite to particular page).

Neither of those citations support Plaintiff's contention that she has incurred $176,921.07 in costs.  That number does not appear in either source, nor has Plaintiff explained how she reached that number or what it represents.  To that extent that Plaintiff asserts she has incurred $176,921.07 because that is the value of the work that has been completed on the Property, that assertion is not germane.  Because all work has been completed, Plaintiff is only entitled to recover what she actually paid to repair the Property.  State Farm has demonstrated that Plaintiff only paid Noel and Building Blocks.  Without proof of payment to any other vendor, Plaintiff cannot show that she has paid more than $78,900.

[17] In addition, Plaintiff testified at a deposition that she is not aware that Water Damage Solutions or Belegu from Quality Air have requested additional payment from her.  *See* Plaintiff Dep. at 119:2-16.  Thus, Plaintiff cannot even assert that she is going to actually or necessarily spend more in the future.

In Opposition, Plaintiff does not contest State Farm's assertions that she has only paid approximately $79,000, or that State Farm has paid in excess of that amount. Instead, she argues that there is a genuine dispute regarding the value of the repairs to the Property, which can be seen in the differences in the estimates prepared by Weaver and by State Farm. Opp'n at 9-12. But that argument misses the point. The issue before the Court is not how much the repair and mitigation work actually costs, but rather, given the terms of the Policy and the fact the work has been completed, how much has Plaintiff paid for the work and whether State Farm has paid her that amount. As State Farm makes clear in its Motion, Plaintiff has paid at most $78,900, while it has paid Plaintiff much more than that. Plaintiff's assertions regarding any differences regarding the actual cash value of the services performed are not relevant to deciding the issues raised in State Farm's Motion.

The Court is also not persuaded by Plaintiff's contention that it should deny State Farm summary judgment because she was "forced into a position in which she already had a $97,021.07 bill for mitigation that [State Farm] told her to do," and therefore, "she could only accept $64,000 of the quality work that Building Blocks could have provided for her whole house for the full $151,760, and for the rest of the house, she had to turn elsewhere for a cheaper repair of about $15,000." Opp'n at 11 (emphasis removed). For one, as State Farm observes, Plaintiff has failed to provide a declaration or any other competent evidence to support her claims, and without that support, the Court cannot rely on her assertions. Reply at 10 (citing *Sec. & Exch. Comm'n v. Bonastia*, 614 F.2d 908, 914 (3d Cir. 1980) (noting that "[d]enials in the form of legal conclusions, unsupported by documentation of specific facts, are insufficient to create issues of material fact that would preclude summary judgment")).

More importantly, "because State Farm has agreed to pay the costs of these repairs once they are contracted to be completed, there is no risk that the [Plaintiff] will not be made whole or be burdened with the obligation of paying for the repairs up front." *Pellegrino v. State Farm Fire & Cas. Co.*, 568 F. App'x 129, 132 (3d Cir. 2014). In other words, under the Policy, State Farm agreed to cover the amount Plaintiff actually and necessarily spent to repair the Property.

Finally, the Court notes that there appears to be little dispute between Plaintiff and State Farm regarding what, if anything, she is owed. Plaintiff admitted at her deposition that she does not believe she is entitled to be paid on anything more than what she has already been paid on. Plaintiff's Dep. at 121:11-15. And even though Plaintiff is of the view that Quality Air should be paid for its work, *id.* at 121:23-122:3, she did not pay Quality Air for that work. Therefore, State Farm is not obligated to pay Belegu or Water Damage Solutions under the unambiguous terms of the Policy.

In sum, State Farm has established that it has not breached the Policy, and that as a matter of law, Plaintiff cannot recover any more under the Policy than she already has. Therefore, the Court will **GRANT** State Farm summary judgment on Count One.

### C.      State Farm Is Entitled to Summary Judgment on Plaintiff's "Bad Faith" Claims (Count Two)

> Under New Jersey law, to establish a claim for bad faith in the insurance context, a plaintiff must show two elements: (1) the insurer lacked a "fairly debatable" reason for its failure to pay a claim, and (2) the insurer knew or recklessly disregarded the lack of a reasonable basis for denying the claim. *Pickett v. Lloyds*, 131 N.J. 457, 473 (1993). To establish a bad faith claim, plaintiff must be able to establish, as a matter of law, a right to summary judgment on the substantive claim; if plaintiff cannot establish a right to summary judgment, the bad faith claim fails. *Id.* In other words, if there are material issues of disputed fact which would preclude summary judgment as a matter of law, an insured cannot maintain a cause of action for bad faith. *Id.*

*Ketzner v. John Hancock Mut. Life Ins. Co.*, 118 F. App'x 594, 599 (3d Cir. 2004). As explained above, Plaintiff has not prevailed on her substantive breach of contract claim. "Having concluded

16

that [State Farm] is entitled to summary judgment on Plaintiff's breach of contract claim, Plaintiff's bad faith claim must be similarly dismissed." *Kimmel*, 787 F. Supp. 3d at 25 (citing *Wimberly Allison Tong & Goo, Inc. v. Travelers Prop. Cas. Co. of Am.*, 559 F. Supp. 2d 504, 515 (D.N.J. 2008), *aff'd*, 352 F. App'x 642 (3d Cir. 2009)).  Therefore, the Court will **GRANT** State Farm summary judgment on Count Two as well.

## IV.    CONCLUSION

For the foregoing reasons, the Court will **GRANT** summary judgment to State Farm.  An appropriate order accompanies this Opinion.

Date: March 3, 2026

Evelyn Padin, U.S.D.J.